IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MONTA GROCE,

                Plaintiff,　　　　　　　　OPINION AND ORDER

v.

　　　　　　　　　　　　　　　　　　　　20-cv-751-wmc
UNITED STATES OF AMERICA,　　　　　　15-cr-78-wmc

                Defendant.

---

This opinion and order addresses Monta Groce's motions for post-conviction relief under 28 U.S.C. § 2255 and for leave to file a supplemental brief. (Dkt. ##1, 7.) While the court will grant Groce's motion for leave to file a supplemental brief, Groce cannot prevail on any of the grounds asserted in his § 2255 motion, including claimed errors in his convictions for sex-trafficking and illegal use of a firearm, the jury's makeup, or the assistance of his trial counsel. First, Groce cannot relitigate arguments about his sex-trafficking convictions that the Seventh Circuit already rejected on direct appeal. Second, his arguments about his firearm conviction and jury makeup both fail on their merits. Third, Groce has not shown that his counsel was ineffective under the controlling standard established in *Strickland v. Washington*, 466 U.S. 668 (1994). Accordingly, the court must deny Groce's § 2255 motion for post-conviction relief.

BACKGROUND[1]

**A. Pretrial Proceedings**

A grand jury first indicted Groce on three counts of sex trafficking in June 2015. Initially represented by the Federal Defender's office, the court later granted that office's motion to withdraw. (CR dkt. ##2, 4, 20, 21.) A new attorney was appointed to represent Groce, but the court later granted her motion to withdraw as well. (CR dkt. ##41, 43.) The minutes from the hearing on this second motion to withdraw directed the Federal Defender to appoint "one more attorney for defendant." (CR dkt. #45.) Groce's next appointed attorney represented him through trial and his initial sentencing. (CR dkt. #53.)

In December 2015, the grand jury further returned a nine-count, superseding indictment against Groce for: (1) three counts of sex trafficking in violation of 18 U.S.C. § 1591(a)(1) & (b)(1) ("Counts 1-3"); (2) conspiracy to transport women from Wisconsin to Minnesota to engage in prostitution in violation of 18 U.S.C. §§ 371, 2421 ("Count 4"); (3) transportation of a woman for purposes of prostitution in violation of 18 U.S.C. §§ 2 & 2421 ("Count 5"); (4) maintaining a house for the purposes of distributing heroin in violation of 21 U.S.C. § 856(a)(1) ("Count 6"); (5) using or carrying a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) ("Count 7"); attempted

---

[1] This opinion and order references the dockets in this § 2255 case, Case No. 20-cv-751-wmc; Groce's criminal case, case no. 15-cr-78-wmc-1; and his direct appeal, Case No. 16-3845. The court will use "Dkt." to indicate docket entries in his '751 § 2255 case; "CR dkt." to indicate docket entries in his '078 criminal case and "APP dkt." to indicate docket entries in his direct criminal appeal.

sex trafficking by force, threats or coercion in violation of 18 U.S.C. §§ 1591(b)(1) & 1594(a) ("Count 8"); and witness retaliation in violation of 18 U.S.C. § 1513(b)(2) ("Count 9"). (CR dkt. #49.) Before trial, Groce moved to introduce evidence that the victims worked as prostitutes before they met him, asserting that their alleged prostitution history indicated that he did not force, threaten, or coerce them to prostitute. (CR dkt. #87, at 10-11.) The government sought to exclude evidence of the victims' sexual history, asserting that the victims' prostitution history was irrelevant to whether Groce forced, threatened, or coerced them to work as prostitutes. (CR dkt. #102, at 4-6.) The court excluded the victims' prostitution history, concluding that the evidence was not probative and that Seventh Circuit case law precluded its admission. (CR dkt. #106, at 7-8.)

### B. Trial

Among other witnesses called by the government at trial, each of the sex-trafficking victims -- L.T., M.S., and A.R. -- testified about how Groce forced and coerced them to prostitute. (*E.g.*, CR dkt. #124, at 76-77; CR dkt. #127, at 86-88; CR dkt. #129, 30-31.) Another witness, M.C., who was not one of the alleged victims of Groce's sex-trafficking crimes, also testified that he had misled her into prostituting herself, then forcibly took some of the money she earned. (CR dkt. #129, at 87-90.)

After the government rested, Groce's counsel stated that she did not intend to put on a defense. In a colloquy with the court, Groce also confirmed that he understood his right to put on a defense as well as his right to not take the stand and testify himself, and that he had sufficient time to discuss those decisions with his counsel. (CR dkt. # 128, at 159-60 and CR dkt. #129, at 100.) As to the sex-trafficking counts, the court charged the

jury that they must find beyond a reasonable doubt that Groce knew or recklessly disregarded "the fact that force, or threats of force, or coercion or any combination of these would be used to cause [the victims] to engage in a commercial sex act." (CR dkt. #117, at 9.) In particular, the court explained "reckless disregard" meant that:

> [a person] is aware of, but consciously or carelessly ignores, facts and circumstances that would reveal the fact that force, threats of force, or coercion would be used to cause another person to engage in a commercial sex act.

(*Id.* at 18.) The jury convicted Groce of Counts 1 through 7 and 9, but acquitted him on Count 8, and the court sentenced him to a total of 25 years' imprisonment. (CR dkt. #122.)

### C. Appeal and Resentencing

Groce appealed his convictions to the Seventh Circuit, challenging both his sex-trafficking and retaliation convictions. *United States v. Groce*, 891 F.3d 260, 263 (7th Cir. 2018). As to the sex-trafficking convictions, he argued, in relevant part, that the district court incorrectly: (1) excluded evidence of the victims' alleged prostitution histories, arguing that he could not have known or disregarded that force, threats, or coercion caused the victims to prostitute because he knew they prostituted before working for him; (2) issued an instruction that lowered the mental state required for sex-trafficking; and (3) admitted prejudicial evidence of his uncharged sex trafficking of M.C. *Id.* at 263, 265-66. He also asserted that "cumulative error" required a retrial. *Id.* at 263. Because the government conceded that the retaliation jury instruction did not state an element of the offense, the Seventh Circuit vacated that conviction and remanded for resentencing

4

but rejected his arguments about the sex-trafficking convictions, affirming those convictions. *Id.*

On remand, Groce's counsel filed a sentencing memorandum seeking a mandatory minimum, 20-year term of imprisonment. (CR dkt. #188.) At resentencing, the district court again sentenced Groce to a total of 25 years' imprisonment, followed by 20 years supervised release. (CR dkt. #209.) Groce appealed again, challenging the conditions of his supervised release, but the Seventh Circuit affirmed. (CR dkt. #214-2.)

OPINION

Relief under § 2255 may only be granted if there is "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2007) (quotation marks omitted). Moreover, a motion under § 2255 generally cannot be used to relitigate matters that were raised on direct appeal. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007). Likewise, a claim generally may not be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal. *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). Thus, claims omitted on direct appeal may be considered on collateral review *only* if the movant can show: (1) good cause for his failing to raise the issue previously and actual prejudice from the alleged error; *or* (2) his actual innocence. *Bousley v. United States,* 523 U.S. 614, 622 (1998). However, that rule does not apply to claims for ineffective assistance of counsel. *Massaro v. United States*, 538 U.S. 500 (2003) (recognizing that an ineffective assistance of

counsel claim can be raised in a § 2255 proceeding, "whether or not the claim could have been raised on direct appeal.").

Groce's arguments are difficult to follow because they are scattered across his § 2255 motion (dkt. #1) and in various supporting briefs (dkt. ##2, 6, 7), so the court organizes them into three basic categories: (1) claims that he raised on direct appeal about errors with his sex-trafficking convictions; (2) claims that he did not raise on direct appeal, but could have -- particularly those concerning his § 924(c) firearm conviction and the makeup of the jury; and (3) ineffective assistance of counsel claims.  The government opposes Groce's § 2255 motion, arguing that:  he cannot relitigate issues already raised and rejected on direct appeal; he was properly convicted under 18 U.S.C. § 924(c); he did not allege a constitutional claim as to the jury makeup; and his counsel was not ineffective.  The court addresses these arguments in turn.

## I.  Sex-Trafficking Issues Litigated on Direct Appeal

Groce argues that:  (1) the victims' previous work as prostitutes showed that he did not force them to work as prostitutes; (2) the court gave improper jury instructions that lowered the mental state requirement for sex trafficking; (3) the court admitted prejudicial evidence of uncharged sex trafficking; (4) court's cumulative errors required a retrial.[2]

---

[2] Groce also asserts that the court gave other, unspecified, improper jury instructions, but because he does not identify the allegedly faulty jury instructions, the court will not further address this assertion.  He also briefly asserts that he improperly received a "trial penalty."  (Dkt. #2.)  By this, the court assumes Groce means that he got a longer sentence because he went to trial, but he offers no evidence of this alleged trial penalty, so the court will not further address that argument, except to state that no such penalty was imposed.  Rather, the heinous nature of his criminal activities -- particularly his psychological and physical intimidation of his victims -- did that work.

However, he concedes -- and the Seventh Circuit opinion also reflects -- Groce raised these same issues in his direct appeal (dkt. #1, at 5), which were rejected.  Accordingly, he cannot relitigate the issues in his § 2255 motion.  *Varela*, 481 F.3d at 935.

First, Groce argues that some of the victims had a history of working as prostitutes, which made the "force element" of the sex-trafficking charges "irrelevant."  However, the Seventh Circuit squarely rejected Groce's argument pointing out that evidence of the victims' history of prostitution was barred by Seventh Circuit precedent.  *Groce*, 891 F.3d at 267 ("'whether the victims had previously worked as prostitutes was irrelevant to the required *mens rea* for the crime'") (quoting *United States v. Carson*, 870 F.3d 584, 593 (7th Cir. 2017)).  Second, Groce argues that the court improperly instructed the jury on a lower *mens rea* requirement for sex trafficking.  In its brief on appeal, the government conceded that the reckless disregard instruction was wrong because the phrase "consciously *or* carelessly" ignored would have allowed the jury to find Groce acted with reckless disregard, even if he only acted negligently rather than willfully. (APP dkt. #36, at 40-41 (emphasis added).)  Although agreeing that the instruction was incorrect, the Seventh Circuit also concluded that the instruction did *not* affect Groce's substantial rights, as overwhelming evidence showed that he *knew* his pattern of abuse, threats, and cynical control of the victims by feeding their heroin addictions caused them to prostitute themselves for him.  *Groce*, 891 F.3d at 269.

Third, Groce briefly contends that the court erred in admitting prejudicial evidence of uncharged sex trafficking, presumably referring to M.C.'s testimony about her prostitution for Groce.  At trial, M.C., Groce's friend, testified that he misled her into going

7

on a prostitution call for $150, and after she returned from the call, Groce attacked her, apparently because she had not given him some of the expected earnings from her call. (Dkt. #129, at 82, 87-89.) Eventually, she testified that Groce threw her to the ground and took some of the money. (*Id.* at 90.) However, the Seventh Circuit rejected his argument, concluding that M.C.'s testimony was direct evidence of the charged conspiracy. *Groce*, 891 F.3d at 270. Fourth and finally, Groce raises a cumulative-error claim as to his sex-trafficking counts, but the Seventh Circuit concluded that any errors were harmless in light of the overwhelming evidence that he committed the sex trafficking acts charged. *Id.* at 271.

## II. Challenges to Firearm Conviction

Groce raises several other issues not raised on direct appeal, including that he was improperly convicted of using or carrying a firearm in relation to a drug trafficking crime, there being no physical evidence that he had a gun, and he only possessed a few grams of heroin for personal use. Groce did not raise this issue on direct appeal, but he argued in his motion for acquittal that there was insufficient evidence to convict him of using or carrying a firearm in relation to a drug trafficking crime, which was arguably enough to prevent that claim from being procedurally barred. (Dkt. #125, at 10); *see McCoy*, 815 F.3d at 295 (claim generally may not be raised for the first time in a § 2255 motion if it could have been raised at trial). In any event, the court need not determine whether Groce properly raises these issues in his § 2255 motion, as they are meritless.

Groce appears to assert that there was insufficient evidence to convict him under § 924(c), arguing that there was no physical evidence of a gun and an unidentified prisoner

8

falsely testified that he had fired a gun.  However, even without physical evidence, there was ample evidence that Groce had had a gun, as three witnesses testified that he threatened someone with a gun during a drug dispute.  (CR dkt. #124, at 80-82 and CR dkt. #132, at 98-100, 141.)

Groce also asserts that he was improperly charged and convicted of using and carrying a firearm in furtherance of a "drug trafficking crime," under § 924(c)(1)(A) because he only had a few grams of heroin for personal use, not for sale.  A "drug trafficking crime" means "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)"[3]  18 U.S.C. § 924(c)(2).  A felony is a crime for which the "maximum term of imprisonment authorized" is "more than one year."  *Id.* § 3559(a).  Here, Groce was convicted of a felony punishable by a maximum of 20 years' imprisonment under the Controlled Substances Act.  21 U.S.C. § 856(b).  Thus, regardless of the drug weight or if he possessed drugs only for personal use, he was properly convicted under § 924(c)(1)(A).

**III. The Makeup of the Jury**

Groce also asserts that the jury makeup was unfair because there were no Black or Hispanic individuals on it.  As background, after the jury was selected, the trial court, on its own, raised an issue based on the government's use of preemptory strikes to remove two prospective jurors under *Batson v. Kentucky*, 476 U.S. 79 (1986).  (CR dkt. #126, at 3-7.)  After trial, however, the district court also concluded that the government articulated credible reasons for striking the prospective jurors, and there was no evidence that either

---

[3] Controlled Substances Act, Pub. L. No. 91-513, 84 Stat. 1236 (1970).

strike was the result of purposeful discrimination. (CR dkt. #145, at 20.) Accordingly, Groce also arguably preserved a constitutional challenge to the jury pool at trial, but he still loses on the merits.

The Constitution requires that juries be drawn "from a source fairly representative of the community." *United States v. Duff*, 76 F.3d 122, 124-25 (7th Cir. 1996) (quotation marks omitted). However, "[d]efendants are not entitled to a jury of any particular composition" and "the makeup of any given [panel of jurors] is not significant, provided all rules for selection have been observed." *Id.* at 125 (quotation marks omitted). Here, Groce's claim fails because the court or parties followed the rules for jury selection (or at least he does not allege otherwise), and he was not entitled to a jury with at least one Black or Hispanic juror. *See id.*

## IV. Ineffective Assistance of Counsel

Finally, Groce asserts that his counsel was ineffective for: (1) not objecting to the sex-trafficking instruction;[4] (2) inadequately cross-examining witnesses and failing to properly investigate his case; (3) not calling witnesses and pressuring him not to testify; (4) not filing a sentencing memorandum; and (5) only meeting with him twice before trial.

---

[4] The court construes Groce's argument that counsel was ineffective for not objecting to the "constructive amendment" of the sex-trafficking counts (Counts 1-3) to be asserting his counsel was ineffective for not objecting to the incorrect "reckless disregard" instruction. (Supplemental Brief (dkt. #7) 2-3.) This is arguably just an improper recharacterization of his sex-trafficking jury instruction argument that the Seventh Circuit rejected on direct appeal. In any event, his ineffective assistance argument fails on the merits. *See Thomas v. United States*, No. 3:16-CR-00044-WMC, 2023 WL 7384991, at *4 (W.D. Wis. Nov. 8, 2023) (movant's attempt to "repackage [issue rejected on direct appeal] as ineffective assistance of counsel is neither meritorious nor appropriate in a § 2255 motion").

10

He also asserts that the district court violated his constitutional rights by refusing to appoint him new counsel.

To prevail on an ineffective assistance of counsel claim, Groce must demonstrate: (1) counsel's constitutionally deficient performance; and (2) actual prejudice because of the alleged deficiency. *Strickland*, 466 U.S. at 687. A movant can only establish his counsel's ineffectiveness with a showing that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Under the first step of *Strickland*, the movant has the burden to overcome the presumption "that counsel's conduct falls within the wide range of reasonable professional assistance." *Weaver v. Nicholson*, 892 F.3d 878, 885 (7th Cir. 2018) (quotation marks omitted). Once ineffectiveness is established, the movant must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This probability must be "sufficient to undermine confidence in the outcome." *Id.* With these standards in mind, the court will turn to Groce's ineffective assistance of counsel claims.

### A. Sex-Trafficking Jury Instruction

Groce argues that his counsel was ineffective for not objecting when the district court improperly instructed the jury on his sex-trafficking charges, lowering the factual basis required to prove what he knew and had the opportunity to observe. He adds that there was reasonable doubt as to whether he knew that the victims were forced to prostitute.

11

Even assuming that Groce's counsel was deficient for not objecting to an erroneous instruction, he cannot show that there is a reasonable probability that the result of his trial would have been different had counsel objected since the Seventh Circuit has already held that the victims' (L.T., M.S., and A.R.) trial testimony establishes that he unquestionably *knew* threats, force, and coercion caused them to prostitute themselves. For example, L.T. testified that Groce withheld heroin if she did not give him all the proceeds from her prostitution calls. (CR dkt. #124, at 76-77.) He also burned her with a cigarette, threatened to kill her family, and slapped her when she tried to leave. (*Id.* at 77-79.) Groce also collected at least 60 percent of L.T.'s and M.S.'s respective prostitution earnings. (*Id.* at 65, 68-70, 72-73 and CR dkt. #127, at 86-87.) He further imposed fines on M.S. if she missed a call and took her phone away if she did something wrong. (CR dkt. #127, at 87-88, 90-91.) In addition, when M.S. said she did not want to complete a prostitution call, Groce looked at his gun and said, "you always have a choice," thereby scaring her into completing the call. (*Id.* at 90-91.) Finally, A.R. testified that when she lost a debit card, Groce ordered her to take a call to make up the money lost on the debit card, threatening to cut off her heroin supply if she did not complete the call. (CR dkt. #129, at 30-31.)

## B.  Remaining Ineffective Assistance Claims

Groce's remaining ineffective assistance of counsel claims are also without merit. First, Groce claims that his counsel inadequately investigated his case and ineffectively cross-examined witnesses, but he neither explains what information further investigation or better cross-examination would have revealed nor how that information would have affected the outcome of his trial. *See Hardamon v. United States*, 319 F.3d 943, 951 (7th

12

Cir. 2003) (movant has the burden of providing "a comprehensive showing as to what the investigation would have produced" (quotation marks omitted)); *United States v. Rodriguez*, 53 F.3d 1439, 1449 (7th Cir. 1995) (ineffective assistance of counsel claim for inadequately cross-examining witness failed where movant neither explained "what [the witness's] responses to further cross-examination might have revealed nor how those responses might have affected the result"). In particular, to the extent Groce wanted his counsel to cross-examine the victims about their prostitution histories, his counsel requested to cross-examine L.T. on that subject, but the court denied his request. (Dkt. #124, at 84). Moreover, the Seventh Circuit concluded that the district court did not abuse its discretion in doing so. *Groce*, 891 F.3d at 267-68.

Second, Groce argues that his counsel was ineffective for not calling witnesses in his defense, and his counsel badgered him into not testifying in his own defense. Again, Groce provides no information about who these uncalled witnesses were nor what they would have said. Thus, he has not shown any prejudice. *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir.1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable"). As for his right to testify, which cannot be waived without his consent, *Starkweather v. Smith*, 574 F.3d 399, 403 (7th Cir. 2009), Groce offers no evidence that his counsel pressured him into not testifying. *See Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) (court may deny defendant's motion when defendant has provided no evidence of ineffectiveness supporting his version of counsel's conduct). In fact, in a related colloquy

with the court, Groce agreed that he had sufficient time to discuss the decision not to testify with counsel, cutting against his assertion that counsel somehow pressured him not to testify. (CR dkt. #129, at 100.)

Third, Groce asserts that his counsel was ineffective for not filing a sentencing memorandum. Assuming that Groce faults his trial counsel for not filing a sentencing memorandum for his initial sentencing, he cannot show any prejudice since the Seventh Circuit remanded the case for resentencing, *Groce*, 891 F.3d at 271, and his new counsel *did* file a sentencing memorandum at resentencing. (CR dkt. #188.)

Fourth, Groce appears to argue that his counsel was ineffective for only meeting with him twice before trial, but he has not shown the meeting frequency and depth were beyond the range of reasonable conduct. *Weaver*, 892 F.3d at 885 (movant has burden of showing that counsel's conduct was unreasonable).

Fifth, Groce argues that the court violated his constitutional rights by refusing to allow him to replace his appointed trial counsel. A defendant who is unable to retain his own attorney does not have a complaint arising under the Sixth Amendment, so long as he is adequately represented by an appointed attorney. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). "When a trial court refuses to appoint new counsel, the defendant can only show a denial of a constitutional right if he can establish that his counsel was ultimately ineffective -- that is, he must show prejudice as required by *Strickland*." *Carlson v. Jess*, 526 F.3d 1018, 1025 (7th Cir. 2008). As explained above, since Groce cannot show prejudice or that his counsel was "ultimately ineffective," the court's

refusal to appoint him replacement counsel did not violate his constitutional rights, particularly having already had two others replaced. *Id.*

**IV. Certificate of Appealability**

Under Rule 11 of the Rules Governing Section 2255 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a movant. A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), meaning that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000)). For all the reasons just discussed, Groce has not made such a showing. Therefore, a certificate of appealability will not issue.

ORDER

IT IS ORDERED that:

1) Groce's motion for leave to file a supplemental response brief (dkt. #7) is GRANTED.

2) Groce's motion to vacate his sentence under 28 U.S.C. § 2255 (dkt. # 1) is DENIED.

3) No certificate of appealability shall issue.

Entered this 14th day of May, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge